**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORAD0
Judge William J. Martínez**

Civil Action No. 13-cv-03067-WJM

JESUS ANTONIO HOLGUIN BELTRAN,

      Applicant,

v.

ERICK HOLDER, JR., United States Attorney General,
JOHN KERRY, [Secretary of State],
JOHN SUTHERS, Attorney General of the State of Colorado,
JOHN LONGSHORE, Field Office Director of ICE,
CHOATE, Warden of the ICE Processing Center,
JOHN MORTON, Director of ICE in Washington, D.C., and
CORINA E. ALMEIDA, Chief Counsel for ICE

      Respondents.

---

## ORDER GRANTING APPLICATION FOR WRIT OF HABEAS CORPUS

---

The matter before the Court is an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 1), filed by Applicant Jesus Antonio Holguin Beltran. The Government filed a Response on December 4, 2013. (ECF No. 18). Mr. Beltran seeks an individualized hearing and bond determination before an Immigration Judge pending removal proceedings. For the reasons stated below, the Court grants Mr. Beltran's request for relief and directs that an Immigration Judge conduct a bond hearing pursuant to 8 U.S.C. § 1226(a)(2) within fourteen days from the date of entry of this Order.

## I.  BACKGROUND

Mr. Beltran was born in Mexico, but has resided in the United States since 2000 when he entered with a visitor's visa.  (ECF No. 1, at 2).  He alleges in the Application that his status was later changed to lawful permanent resident.  (*Id.*)  Mr. Beltran is married to a United States citizen and has three U.S. citizen children.  (*Id.*).  On August 29, 2007, Applicant pled guilty to possession of marijuana, in violation of COLO. REV. STAT. (C.R.S.) § 18-18-406(4)(a)(I), and was ordered to pay a fine.  (ECF No. 18-1, at 3).  On April 4, 2008, Applicant again pled guilty to violating C.R.S. § 18-18-406(4)(a)(I).  (ECF No. 18-2, at 3).  He was sentenced to one year of probation, which ended on April 4, 2009.  (*Id.*).  Immigration and Customs Enforcement (ICE) took Applicant into custody on April 8, 2013 and charged him with being removable under 8 U.S.C. § 1227(a)(1)(A) and 8 U.S.C. § 1182(a)(2)(A)(i)(II).  (ECF No. 18-3, Declaration of Steven D. Estrada, at ¶¶ 4-5; ECF No. 18-4, at 2-4).  An Immigration Judge determined that Mr. Beltran was ineligible for bond.  (ECF No. 18-4, at 5, 10).  On August 27, 2013, an Immigration Judge ordered that Applicant be removed from the United States to Mexico.  (*Id.* at 11).  Mr. Beltran appealed the removal decision to the Board of Immigration Appeals ("BIA") on September 5, 2013.  (*Id.* at 12-16).  That appeal is pending.  (ECF No. 18, at 3).  Applicant remains in ICE custody pursuant to § 1226(c) pending resolution of his appeal.  (*Id.*).

## II.  HABEAS APPLICATION

Mr. Beltran initiated this action on November 12, 2013.  He contends in the § 2241 Application that he is not subject to mandatory detention under 8 U.S.C.

§ 1226(c).  He further claims that his detention without an individualized bond hearing violates his due process rights under the Fifth Amendment of the United States Constitution.  For relief, Mr. Beltran seeks an individualized bond hearing before an Immigration Judge pursuant to § 1226(c).  (ECF No. 1, at 5)  He also asks the Court to "grant and clarify" his status as a United States national.  (*Id.*).  Finally, Applicant requests that the Court enter an order preventing Respondents from transferring him out of the District of Colorado during the pendency of this habeas proceeding.  (*Id.* at 16).

Respondents assert in their Response to Order to Show Cause that Mr. Beltran is properly detained without a bond hearing pursuant to 8 U.S.C. § 1226(a), and that his detention comports with due process.  Respondents further maintain that Mr. Beltran's request for a grant of nationality is not properly raised in his § 2241 Application.  Finally, Respondents argue that the Court lacks jurisdiction to prevent ICE from transferring Applicant to a different jurisdiction.  (ECF No. 18).

## III.  LEGAL STANDARDS

### A.  Standard of Review

#### 1.  Habeas Corpus Relief

An application for habeas corpus pursuant to 28 U.S.C. § 2241 may only be granted if the applicant "is in custody in violation of the Constitution, or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  Federal courts have habeas jurisdiction to examine the statutory and constitutional bases for an immigration detention unrelated to a final order of removal. *Demore v. Kim*, 538 U.S. 510, 517–18 (2003); *see also Ferry*

*v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006) (finding district court properly exercised jurisdiction over alien's habeas petition challenging his continued detention without bond or a bond hearing); *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir.2004) ("Challenges to immigration detention are properly brought directly through habeas.") (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88, 699 (2001)).

Mr. Beltran is currently in the custody of immigration officials in Aurora, Colorado. "[F]or core habeas petitions challenging present physical confinement, jurisdiction lies only in one district: the district of confinement." *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004); *see also United States v. Scott*, 803 F.2d 1095, 1096 (10th Cir.1986) ("A § 2241 petition for a writ of habeas corpus must be addressed to the federal district court in the district where the prisoner is confined."). Because Applicant is detained within the District of Colorado, his § 2241 application was filed properly in this Court.

## 2.  Pro Se Litigant

Mr. Beltran is proceeding *pro se.* The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that an applicant can prove facts that have not been alleged, or that a respondent has violated laws in ways that an applicant has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). The applicant's pro se status does

4

not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## B. Exhaustion

The requirement that administrative remedies be exhausted as a prerequisite to judicial relief can be created by statute or the judiciary.[1] Congress has not mandated the exhaustion of administrative remedies for challenges to mandatory detention under 8 U.S.C. § 1226(c). *See Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). Nor does the habeas statute contain an exhaustion requirement. *See* 28 U.S.C. § 2241. The United States Court of Appeals for the Tenth Circuit has held that habeas petitioners are generally required to exhaust their administrative remedies prior to seeking a writ under § 2241. *See Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010); *Williams v. O'Brien,* 792 F.2d 986, 987 (10th Cir. 1986) (per curiam). However, exhaustion of remedies is not required if exhaustion would be futile. *Garza*, 596 F.3d at 1203.

Mr. Beltran seeks an individualized hearing and bond determination pursuant to 8 U.S.C. § 1226(a). On May 2, 2013, an Immigration Judge ruled that there was "no jurisdiction" to make a custody determination. (ECF No. 18-4, at 10). There is nothing in the record to suggest that Mr. Beltran appealed the custody determination. However, In light of the fact that immigration officials have previously ruled that non citizens in Mr.

---

[1]Respondents have not raised the defense of failure to exhaust administrative remedies. However, the Court can address the exhaustion issue *sua sponte. See Merritt v. U.S. Parole Comm'n*, 232 F.3d 902 (Table), 2000 WL 1370432 (10th Cir. May 30, 2000) (unpublished) (citing *Hardiman v. Reynolds*, 971 F.2d 500, 502-03 (10th Cir.1992) (holding that "where a doctrine implicates [nonjurisdictional] values that may transcend the concerns of the parties to an action, it is not inappropriate for the court, on its own motion, to invoke the doctrine.") (citation and quotations omitted).

Beltran's circumstances are subject to mandatory detention under § 1226(c) and not entitled to individualized bond determinations, *In re Rojas,* 23 I. & N. Dec. 117 (BIA 2001) ("*Rojas*"), the Court finds that any appeal by Mr. Beltran would have been futile. *See Baquera v. Longshore,* No. 13-cv-00543-RM-MEH, 948 F.Supp.2d 1258, 2013 WL 2423178, at *1 (D. Colo. June 4, 2013).

## C.  Statutory Framework

Title 8 of the United States Code Section 1226 governs the pre-removal detention of an alien.  Section 1226(a) authorizes immigration officials to arrest and to detain or release an alien pending a decision on whether the alien is to be removed from the United States.  An alien has the right under § 1226(a) to a hearing before an Immigration Judge to determine whether he or she should be released on bond during the removal process.  The broad authority given to immigration officials under § 1226(a) to release an alien on bond following a hearing applies in all circumstances "[e]xcept as provided in subsection (c) of this section."   Section 1226(c) authorizes mandatory detention of certain aliens without a bond hearing and provides, in relevant part:

> (c) Detention of criminal aliens
>
> (1) Custody
>
> The Attorney General shall take into custody any alien who--
>
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been

6

> sentence [FN1] to a term of imprisonment of at least 1 year, or
>
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c).   The mandatory detention authorized by subsection (c) contains an extremely limited exception in witness protection circumstances not applicable in this case.  *See* 8 U.S.C. § 1226(c)(2).

## IV.  ANALYSIS

### A.  Proper Respondent

Respondents argue in a footnote that Defendant Choate is the only proper respondent to the § 2241 Application because Mr. Choate is the warden of the Aurora Detention Facility where Mr. Beltran is detained.  (ECF No. 18, at 1 n.1) (citing *Rumsfeld*, 542 U.S. at 435 (affirming general rule that the proper respondent to a § 2241 application is the warden of the facility where the prisoner is being held, "not the Attorney General or some other remote supervisory official.")).

In a recent decision, District Judge Christine M. Arguello discussed at length the issue of the proper respondent(s) to a non citizen's § 2241 application challenging the legality of his or her pre-removal detention.  *See Castillo-Hernandez v. Longshore*, ___ F. Supp.2d ___, 2013 WL 6840192 at **2-13 (D. Colo. Dec. 27, 2013).  This Court agrees with Judge Arguello's determination that the immediate custodian rule of *Padilla* does not necessarily determine the proper respondent in such cases.  *Id.* at *3.

Furthermore, the Court declines to dismiss Eric Holder, the United States Attorney

General, John Longshore, ICE Field Director, John Morton, ICE Director, and Johnny

Choate, Warden, because those individuals may have some authority to grant Applicant

a bond hearing, to release him from custody, or to interpret and apply the immigration

statutes. *See id.* However, John Suthers, the Colorado Attorney General, and John

Kerry, the United States Secretary of State, will be dismissed because they are not

potentially proper respondents to this action.

**B.  Authority to Detain Applicant under 8 U.S.C. § 1226(c)**

Mr. Beltran argues in the Application that immigration officials do not have

authority to detain him under 8 U.S.C. § 1226(c) because: (1) his two convictions

relating to a controlled substance do not qualify as aggravated offenses or crimes of

moral turpitude and, therefore, are not within the purview of the statute; and (2) ICE did

not take him into custody until several years after his release to probation. (ECF No. 1,

at 11).

**1.    Applicant's offenses are within the purview of § 1226(c)**

Section 1226(c) requires the Attorney General to take into custody an alien who

is inadmissible by reason of having committed an offense covered in § 1227(a)(2)(B).

Respondents argue, and the Court agrees, that Mr. Beltran's two separate offenses

involving possession of marijuana render him removable under 8 U.S.C.

§ 1227(a)(2)(B)(i).  The statute provides:

(a) Classes of deportable aliens

(2) Criminal offenses

(B) Controlled substances

8

> (i) Conviction
>
> Any alien who at any time after admission has been
> convicted of a violation of (or a conspiracy or attempt to
> violate) any law or regulation of a State, the United States, or
> a foreign country relating to a controlled substance (as
> defined in section 802 of Title 21), other than a single
> offense involving possession for one's own use of 30 grams
> or less of marijuana, is deportable.

8 U.S.C. § 1227(a)(2)(B)(i).

The statute's exception for a single offense "involving possession for one's own use of 30 grams or less of marijuana," does not apply to Applicant because he committed more than one offense. Moreover, the removal statute, 8 U.S.C. § 1229, does not impose a time limit on the initiation of removal proceedings after the criminal convictions. *See* 8 U.S.C. § 1229(d); *see also Restrepo v. Attorney General*, 617 F.2d 787, 801 (10th Cir. 2010) (agreeing with BIA that removal proceedings based on criminal convictions approximately ten years prior were not time barred). Accordingly, the Court finds that Mr. Beltran's offenses are within the purview of § 1226(c). Nonetheless, Mr. Beltran cannot be detained under § 1226(c) because he was not taken into custody "when . . . released," as required by the statute.

**2.     Under the plain language of the statute, Applicant was not detained "when . . . released"**

Section 1226(c) provides that an alien who commits any offense covered by the statute is subject to mandatory detention "when the alien is released." 8 U.S.C. § 1226(c)(1). Mr. Beltran argues that subsection (c) does not apply to him because immigration officials detained him several years after he was released from probation. Respondents contend that the "when . . . released" provision is ambiguous, and,

therefore, the BIA's interpretation of the statute in *Rojas*, is entitled to deference under

*Chevron USA, Inc. v. Natural Resources Defense Council, Inc.* ("*Chevron*"), 467 U.S.

837 (1984).

In *Rojas*, the BIA considered whether an alien was subject to mandatory

detention under § 1226(c) where the alien was not taken into custody until two days

after his release from prison.   23 I. & N. Dec. at 117-18.   A majority of the Board

members concluded that the "when . . . released" clause in § 1226(c) "does direct the

Attorney General to take custody of aliens immediately upon their release from criminal

confinement." *Id.* at 122.   However, the BIA held that the "when ... released" clause was

a "statutory command" rather than a "description of an alien who is subject to detention,"

and therefore mandatory detention could apply even years after the alien's "release."

*See id.* at 121–22.

When reviewing an agency's construction of the statute which it administers, the

Court must consider the principles of deference described in *Chevron*." See *INS v.*

*Aguirre-Aguirre*, 526 U.S. 415, 424 (1999) (quoting *Chevron*, 467 U.S. at 842) (internal

citation omitted).   Under *Chevron*, the Court's inquiry is two-fold:

> First, always, is the question whether Congress has directly spoken to the
> precise question at issue. If the intent of Congress is clear, that is the end
> of the matter; for the court, as well as the agency, must give effect to the
> unambiguously expressed intent of Congress. If, however, the court
> determines Congress has not directly addressed the precise question at
> issue, the court does not simply impose its own construction on the
> statute, as would be necessary in the absence of an administrative
> interpretation. Rather, if the statute is silent or ambiguous with respect to
> the specific issue, the question for the court is whether the agency's
> answer is based on a permissible construction of the statute.

*Chevron*, 467 U.S. at 842-43.   "The judiciary is the final authority on issues of statutory

construction and must reject administrative constructions which are contrary to clear

congressional intent." *INS v. Cardoza–Fonseca*, 480 U.S. 421, 447–48 (1987) (quoting *Chevron*, 467 U.S. at 843 n. 9).

At the first step of the *Chevron* analysis, a court begins with the statute's language, giving effect to its "'most natural reading.'" *United States v. Villa*, 589 F.3d 1334, 1343 (10th Cir. 2009) (quoting *United States v. Ressam*, 553 U.S. 272 (2008) (other citation omitted).  "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.  When the words of a statute are unambiguous, . . . judicial inquiry is complete." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (citations and quotations omitted); *see also Wright v. Fed. Bureau of Prisons,* 451 F.3d 1231, 1233 (10th Cir. 2006) ("[T]he court 'must give effect to the unambiguously expressed intent of Congress.'") (quoting *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 132 (2000)).  In construing the meaning of a particular word, courts must consider the context in which it appears. *See Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004); *Villa*, 589 F.3d at 1343 (citing *Bailey v. United States*, 516 U.S. 137, 145 (1995)).

The Court finds that the plain meaning of "when" in § 1226(c), read in context of the entire phrase "when the alien is released," imposes a temporal limitation on when mandatory detention should apply and does not authorize immigration officials to detain an alien *at any time* after release from criminal custody.  *See Castillo-Hernandez*, 2013 WL 6840192, at *17 (citing *Castaneda v. Souza*, No. 13–CIV–10874–WGY, 2013 WL 3353747, at *5 (D.Mass. July 3, 2013) ("The most natural reading of 'when ... released' is the one that comports with the most common understanding of 'when.' 'When' typically means 'at the time.' Thus, this Court holds that the most natural reading of

11

'when ... released' is 'at the time of release' or 'immediately upon release.'")); *see also* American Heritage Dictionary (4th ed. 2000) (defining "when" as "at the time that" and "as soon as")  (ECF No. 18-5, at 9); The Oxford English Dictionary (2d ed. 1989) (defining "when" as "in reference to a definite actual occurrence or fact . . . : at the time that, on the occasion that").  (ECF No. 18-5, at 5).  Pursuant to the plain language of the statute, Mr. Beltran's detention by immigration officials five years after his release on probation does not satisfy the statutory directive of detention "when . . . released."[2]

The Court rejects Respondents' efforts to read an ambiguity into the statute for the reasons discussed by District Judge Arguello in *Castillo-Hernandez, see* 2013 WL 6840192, at **19-20 and by District Judge Raymond P Moore in *Baquera.*  2013 WL 2423178, at *4.  Further, Respondent's arguments fail to recognize that the BIA concluded in *Rojas* that the "when . . . released" clause in § 1226(c) "does direct the Attorney General to take custody of aliens immediately upon their release from criminal confinement."  23 I. & N. Dec. at 122.   The BIA did not find that the term "when . . . released" was ambiguous, but instead determined that the language was not an integral part of the "description" of those subject to mandatory detention under § 1226(c).  *Id.* at 121-22.  *Chevron* deference comes into play only when the statute is ambiguous "with respect to the specific issue."  *Chevron*, 467 U.S. at 843.

There is no controlling Supreme Court or Tenth Circuit precedent interpreting the phrase "when the alien is released" in § 1226(c).  However, numerous district courts to address the issue, including courts within the Tenth Circuit, have held that the plain

---

[2]The Court need not decide in this case the exact parameters of when, upon release, an alien must be detained.

language of the statute requires immigration officials to detain an alien at the time the alien is released from custody in order for mandatory detention under § 1226(c) to apply. *See Baquera,* 2013 WL 2423178, at *4 (holding that mandatory detention did not apply to applicant who was detained by ICE ten years after his release on probation); *Castillo-Hernandez*, 2013 WL 6840192 at 19 (holding that § 1226(c) did not apply to applicant who was detained by ICE several years after his release); *Valdez v. Terry,* 874 F. Supp.2d 1262, 1276 (D.N.M. 2012) (holding that mandatory detention did not apply to alien who was not detained immediately upon release from custody and ordering an individualized bond hearing under § 1226(a)); *Ortiz v. Holder,* No. 2:11 CV 1146 DAK, 2012 WL 893154, at *3 (D. Utah Mar. 14, 2012) ("[T]his court joins the vast majority of federal courts that have addressed this issue . . . and finds that, because Petitioner was not taken into immigration custody when he was released by state officials from his qualifying offense(s), § 1226(c) does not apply, and he is entitled to an individualized bond hearing with an Immigration Judge.").[3]

The Third and Four Circuits, the only circuit courts of appeal to have addressed the issue, have interpreted § 1226(c) to authorize the mandatory detention of aliens detained years after release from their criminal convictions. *See Hosh v. Lucero,* 680 F.3d 375 (4th Cir. 2012) (denying bond hearing to alien arrested three years after his

---

[3] *See also Deluis–Morelos v. ICE Field Office Director*, No. 12CV–1905JLR, 2013 WL 1914390 (W.D.Wash. May 8, 2013); *Castillo v. ICE Field Office Director*, 907 F.Supp.2d 1235 (W.D.Wash.2012); *Bogarin–Flores v. Napolitano*, Civ. No. 12CV0399 JAH WMC, 2012 WL 3283287 (S.D.Cal. Aug. 10, 2012); *Rosario v. Prindle*, No. 11–217, 2011 WL 6942560 (E.D.Ky. Nov. 28, 2011), adopted by 2012 WL 12920 (E.D.Ky. Jan. 4, 2012); *Rianto v. Holder*, No. CV–11–0137–PHX–FJM, 2011 WL 3489613 (D.Ariz. Aug. 9, 2011); *Louisaire v. Muller*, 758 F.Supp.2d 229 (S.D.N.Y.2010); *Monestime v. Reilly*, 704 F.Supp.2d 453 (S.D.N.Y.2010); *Khodr v. Adduci*, 697 F.Supp.2d 774, 778 (E.D.Mich.2010); *Scarlett v. U.S. Dep't of Homeland Sec.*, 632 F.Supp.2d 214, 219 (W.D.N.Y.2009); *Bromfield v. Clark*, No. C06–0757–RSM, 2007 WL 527511 (W.D.Wash. Feb. 14, 2007); *Zabadi v. Chertoff*, No. C05–03335, 2005 WL 3157377 (N.D.Cal. Nov. 22, 2005).

release on probation based on conclusion that "when" is ambiguous and on its consequent deferral to the BIA construction of the statute pursuant to *Chevron* analysis); *Sylvain v. Atty. Gen. of the United States*, 714 F.3d 150 (3rd Cir. 2013) (denying bond hearing to alien arrested four years after his release from prison based on conclusion that "when . . . released" language did not create mandatory deadline to arrest and detain a criminal alien).[4]  The Court finds that these decisions are not persuasive because they ignore the plain language of the statute.

### 3.  Other rules of statutory construction do not authorize Applicant's mandatory detention under § 1226(c)

Respondents maintain that even if § 1226(c) requires detention immediately upon the alien's release from custody, ICE's failure to detain Applicant immediately does not entitle him to a bond hearing.  The Third and Fourth Circuits have agreed with this argument.

In *Hosh* and *Sylvain*, the Third and Fourth Circuits concluded that § 1226(c) fails to specify a consequence for non compliance with the statutory timing provisions, and, therefore, the federal court should not impose its own coercive sanction by requiring a bond hearing because "the better-late-than-never principle" applies to ensure that the

---

[4]In addition, several district courts have found the statute ambiguous and have given *Chevron* deference to the BIA's interpretation in *Rojas. See Mendoza v. Muller,* 2012 WL 252188, at *3 (S.D.N.Y. Jan.25, 2012) (finding that the mandatory detention provision is ambiguous and giving deference to Matter of Rojas ); *Diaz v. Muller,* 2011 WL 3422856, at *2 (D.N.J. Aug.4, 2011) (finding "when ... released" to be ambiguous); *Gomez v. Napolitano,* 2011 WL 2224768 (S.D.N.Y. May 31, 2011) (same); *Sulayao v. Shanahan,* 2009 WL 3003188 (S.D.N.Y. Sept.15, 2009) (same); *Serrano v. Estrada,* 2002 WL 485699 (N.D.Tex. Mar.6, 2002) (holding that mandatory detention was unconstitutional but noting in dicta that § 1226(c) is ambiguous); *Garcia Valles v. Rawson,* 2011 WL 4729833 (E.D.Wis. October 7, 2011) (finding § 1226(c) to be ambiguous); *Sidorov v. Sabol,* 2010 WL 1805690, at *3–4 (M.D.Pa. May 5, 2010) (same); *Hernandez v. Sabol,* 2011 WL 4949003 (M.D.Pa. Oct.18, 2011) (same)*; Saucedo–Tellez v. Perryman,* 55 F.Supp.2d 882, 885 (N.D.Ill.1999) (same).

public is not robbed of statutory benefits. *Sylvain*, 714 F.3d at 158; *see also Hosh*, 680 F.3d at 381-383.  However, the Third and Fourth Circuits' reasoning was based on Supreme Court and Tenth Circuit cases interpreting statutes different from § 1226.  *See Hosh*, 680 F.3d at 381-83 (citing *United States v. Montalvo–Murillo*, 495 U.S. 711 (1990) (applying Bail Reform Act)); *Sylvain*, 714 F.3d at 157-160 (citing *Montalvo-Murillo* and *United States v. Dolan*, 571 F.3d 1022, 1023 (10th Cir. 2009) (applying Mandatory Victims Restitution Act), *aff'd*, 560 U.S. 605 (2010)).  The statutes at issue in *Montalvo-Murillo*, and *Dolan* contained "a time sensitive directive to government officials in the context of a statute that was silent as to the consequence of a failure to adhere to the time requirements established by Congress." *Baquera*, 2013 WL 2423178, at *6. Because the statutes were silent with regard to the consequences should the deadlines not be met, both the Supreme Court and the Tenth Circuit were "reluctant to create a coercive sanction, especially one which penalized the public by causing the loss of a valuable right created by Congress." *Id.*  In light of Congressional silence, the Supreme Court and Tenth Circuit concluded the government was not stripped of its authority to act when it missed the statutory deadline.  *See Montalvo-Murillo*, 495 U.S. at 717-18; *Dolan*, 571 F.3d at 1023.

The Court is unconvinced that *Montalvo-Murillo* and *Dolan* have any bearing on the statutory issue presented in this case.  Section § 1226 governs the release and detention of aliens pending a final removal order.  Subsection (a) authorizes the detention or release of an alien on bond following an individualized hearing "[e]xcept as provided in subsection (c) of this section. . ."  Subsection (c)(1) directs that certain aliens be taken into custody "when . . . released."  Subsection (c)(2) provides that the

15

aliens "described in paragraph (1)" may be released only in limited circumstances involving witness protection.  Thus, under the structure of the statute, § 1226(a) provides a general rule of individualized hearings.  Section 1226(c) is an exception to the general rule and permits the criminal aliens described in § 1226(c)(1) to be mandatorily detained without a hearing "when . . . released."  If immigration officials fail to detain a criminal alien described in § 1226(c)(1) when released, then the alien is not within the class of aliens subject to mandatory detention under § 1226(c).  Because the exception to § 1226(a) no longer applies, the general rule of § 1226(a) entitles the alien to an individualized bond hearing.  The statute is not silent on the consequences of a failure to detain an alien "when . . . released." As such, "[t]here is no judicially created sanction—coercive or otherwise—necessary to entitle [Applicant] to a bond hearing" and . . . "whatever appropriate reticence there is to the creation of judicial overlays on congressional language is simply not at issue in this matter." *Baquera*, 2013 WL 2423178, at *7.

Finally, the Court's interpretation of § 1226(c) is not contrary to Congress' intent to protect the public from dangerous criminal aliens.  The Court's order does not effect Mr. Beltran's release from custody.  Instead, the Court is directing that Applicant be afforded an individualized bond hearing at which time his dangerousness to the public can be assessed.

Accordingly, for the reasons discussed above, the Court finds that the mandatory detention authorized by § 1226(c) does not apply to Mr. Beltran and that he is entitled to a bond hearing before an Immigration Judge, pursuant to § 1226(a).

**B.  Due Process Claim**

Mr. Beltran also claims that his mandatory detention under § 1226(c) without an individualized bond hearing violates due process.  The Court does not reach the merits of this claim because Applicant has been granted the requested relief on statutory grounds.  *See Morton v. Ruiz*, 415 U.S. 199, 238 (1974).

## C.  Declaration of Applicant's Immigration Status

Mr. Beltran further asks the Court to "grant and clarify" his status as a United States national pursuant to 8 U.S.C. § 101(A)(22)(B) so that he is not subject to removal as an alien.  (ECF No. 1, at 5).  The Court does not have subject matter jurisdiction to review this claim.

Applicant's alleged status as a United States national is at issue in the pending removal proceeding.  (ECF No. 18-4).  The immigration judge determined that Mr. Beltran was not a national and ordered his removal.  (ECF No. 18-4).  The removal decision is pending review before the BIA.

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."  *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541 (1986). The REAL ID Act of 2005 curtailed habeas review by shifting "certain immigration disputes formerly raised through habeas corpus in the district courts to the courts of appeals and converted them into petitions for review."  *Hem v. Maurer,* 458 F.3d 1185, 1188 n.3 (10th Cir. 2006).

Section 1252 governs judicial review of removal proceedings and subsection (a)(5), entitled "Exclusive Means of Review," provides:

17

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) of this section.[5]  For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1362 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

Section 1252(a)(5) "makes a petition for review to an appellate court the sole means of review of an order of removal issued under the [Immigration and Nationality Act], and specifically excludes review under the habeas statutes."  *Hem v. Mauer,* 458 F.3d 1185, 1188 n.3 (10th Cir. 2006).

Once Mr. Beltran exhausts his administrative remedies before the BIA, he can petition the Circuit Court of Appeals for the Tenth Circuit for review of the final order of removal, including for review of the nationality claim.  *See* 8 U.S.C. § 1252(b)(5) (if no genuine issue of material fact about petitioner's nationality is presented in pleadings and affidavits, then the court of appeals will decide the nationality claim) *and* 8 U.S.C. § 1252(b)(5)(B) (if the court of appeals finds that a genuine issue of material fact exists concerning the nationality claim, the court of appeals will transfer the proceeding to the district court for a new hearing on the nationality claim); *see also Omolo v. Gonzales*, 452 F.3d 404, 407 (5th Cir. 2006) (court of appeals had exclusive jurisdiction to review and determine whether petitioner was a national by construing habeas petition that was

---

[5]  8 U.S.C. § 1252(e), which pertains to judicial review of orders under 8 U.S.C. § 1225(b)(1), does not apply here.

transferred from district court as petition for review).   At this time, the Court lacks jurisdiction over Mr. Beltran's request for a declaration of his status as a United States national.

**D.  Authority to Order that Applicant be Detained within the Court's Jurisdiction**

Finally, Mr. Beltran requests an order preventing the Respondents from transferring him "out of the jurisdiction of this Court during the pendency of this proceeding." (ECF No. 1, at 16).  Respondents argue that this Court lacks jurisdiction to grated the requested relief.

The Attorney General has discretion to determine where aliens are to be detained.  *See* 8 U.S.C. § 1231(g)(1) (stating that the Attorney General shall "arrange for appropriate places of detention for aliens detained pending removal.").  The Attorney General's discretionary power to transfer aliens from one locale to another, as he deems appropriate, arises from § 1231(g)(1). *See Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir.1999); *Avramenkov v. I.N.S.,* 99 F.Supp.2d 210, 213 (D. Conn. 2000). Furthermore, in enacting 8 U.S.C. § 1252(a)(2)(B)(ii), Congress intended to insulate discretionary decisions of the Attorney General from judicial review.  *Id.*  The Court, therefore, will not involve itself in a decision pertaining to the location of Applicant's future detention.

Mr. Beltran's implied concern that the Court will lose jurisdiction over his § 2241 Application if he is transferred to a facility outside the District of Colorado is unfounded. "It is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir.

1985) (citing *Ahrens v. Clark*, 335 U.S. 188, 193, 68 S.Ct. 1443, 1445, 92 L.Ed. 1898 (1948)) (other case citations omitted).  Accordingly, this Court retains jurisdiction over Mr. Beltran's § 2241 application until disposition.

IV.  CONCLUSION

For the reasons discusses above, the Court holds that Mr. Beltran is not subject to the mandatory detention required by § 1226(c).  Applicant's pre-removal detention is instead governed by § 1226(a).  Accordingly, it is

ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 1), filed by Applicant Jesus Antonio Holguin Beltran, is GRANTED in part and DENIED in part, as follows:

(1) ICE shall provide Mr. Beltran with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a)(2) within 14 days of the date of entry of this Order;

(2) Mr. Beltran's requests that the Court: declare or clarify his status as a United States national; and, enter an order preventing ICE from transferring him outside the District of Colorado, are dismissed without prejudice for lack of subject matter jurisdiction.  It is

FURTHER ORDERED that John Suthers, the Colorado Attorney General, and John Kerry, the United States Secretary of State, are DISMISSED as parties to this action.  It is

FURTHER ORDERED that all pending motions are DENIED as moot.

Dated this 16th day of January, 2014.

BY THE COURT:

_____

William J. Martínez
United States District Judge